# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| CROP PRODUCTION SERVICES, INC. | § | |
| | § | |
| V. | § | CASE NO. 4:14-CV-559 |
| | § | Judge Mazzant |
| JOHN KEELEY, ET AL. | § | |

## MEMORANDUM OPINION

Pending before the Court are Plaintiff's Motion for Partial Summary Judgment (Dkt. #38) and Defendants John Keeley and Dawn Keeley's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. #40). After reviewing the motions and the relevant pleadings, the Court finds that Plaintiff's motion is granted in part and denied in part and that John Keeley and Dawn Keeley's motion is denied.

## BACKGROUND

From January 1, 2008, until September of 2009, Defendants Thomas Grabanski, John Keeley, and Dawn Keeley were general partners of G&K Farms, a North Dakota General Partnership (Dkt. #43, Ex. 3). Plaintiff Crop Production Services, Inc. ("CPS") alleges that during 2009 it delivered several shipments of product to G&K Farms and was not paid for the goods (Dkt. #43, Ex. 1 at pp. 3-4). Plaintiff argues that G&K Farms' debt for goods received in 2009 amounts to $642,669.55 (Dkt. #43, Ex. 1 at p. 4).

In relation to these transactions, John Keeley and Thomas Grabanski signed a Credit Application and Agreement (the "2008 Agreement") in which G&K Farms assumed liability for obligations and reasonable attorneys' fees and costs of collection and, according to Plaintiff, John Keeley agreed to personally guarantee payment and performance of G&K Farms and assumed personal liability for all obligations due and owing to Plaintiff (Dkt. #38, at p. 4; Ex. A-

1

1). In February of 2009, John Keeley and Thomas Grabanski also submitted a credit application (the "2009 Application") to Plaintiff in which John Keeley allegedly made material misrepresentations of fact (Dkt. #43, Ex. 7).

On September 15 and 16 of 2009, John Keeley and Dawn Keeley (the "Keeleys") assigned their interests in G&K Farms to Thomas Grabanski (Dkt. #43, Ex. 3 at p. 2). On July 29, 2013, Thomas Grabanski filed for bankruptcy (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court") (Dkt. #43, Ex. 5 at p.2). On July 31, 2013, CPS initiated an action against Thomas Grabanski and John Keeley for claims arising from the alleged debt as a state court action, captioned *Crop Production Services, Inc. v. Thomas Grabanski and John Keeley*, in the 76th/276th Judicial District Court of Camp County, Texas (the "Debt Case"). On September 10, 2013, John Keeley filed a Notice of Removal with the Bankruptcy Court. The case was automatically referred to the Court, and the Court referred the Debt Case to the Bankruptcy Court based on its relation to the Bankruptcy Case pursuant to 28 U.S.C. §§ 1334 and 1452(a). John Keeley filed a cross-claim against Tom Grabanski in the Debt Case. On Thomas Grabanski's motion, the Bankruptcy Court dismissed the claims and cross-claims asserted against him. On August 13, 2014, following a motion from the Keeleys, the Court withdrew the reference of the Debt Case from the Bankruptcy Court so that the Debt Case might proceed before the Court (Dkts. #2, 7).

While the Debt Case was pending as an adversary proceeding in the Bankruptcy Court, CPS filed a Second Amended Complaint on April 22, 2014, adding G&K Farms and Dawn Keeley as parties and making claims under six causes of action: (1) sworn account; (2) common law action on account; (3) breach of contract; (4) quantum meruit; (5) suit on guaranty; and (6) fraud, fraudulent inducement, and fraudulent concealment (Dkt. #43, Ex. 1). As the case

currently stands, claims 1-4 are asserted against G&K Farms, John Keeley, and Dawn Keeley while claims 5 and 6 are asserted solely against John Keeley.

On November 6, 2014, Plaintiff moved for default judgment against G&K Farms (Dkt. #26). The Court granted default judgment to Plaintiff against G&K Farms on January 8, 2015 (Dkt. #30).

On April 30, 2015, Plaintiff brought a motion for partial summary judgment based in part on the default judgment (Dkt. #38). On May 8, 2015, Plaintiff filed a supplemental motion for partial summary judgment (Dkt. #51). On May 14, 2015, the Keeleys filed a response (Dkt. #52). On June 1, 2015, Plaintiff filed a reply (Dkt. #61).

On May 1, 2015, the Keeleys brought their motion for summary judgment (Dkt. #40). On May 22, 2015, Plaintiff filed a response (Dkt. #56). On May 29, 2015, the Keeleys filed a reply (Dkt. #58). On May 1, 2015, the Keeleys also brought a motion to vacate the default judgment against G&K Farms (Dkt. #41). On July 24, 2015, the Court denied Defendants' motion to vacate (Dkt. #78).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("The Federal Rules of Civil Procedure have for almost 50 years authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact."). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters. Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).  The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 256.  If the movant bears the burden on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49).  The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 256-57.  No "mere denial of material facts nor…unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Computer Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004).  Rather, the court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *See United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001).  The court must consider all of the evidence, but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

# ANALYSIS

*Joint and Several Liability of the Keeleys and Claims on Sworn Account, Common Law Action on Account, Breach of Contract, and Quantum Meruit*

Plaintiff first moved for summary judgment as to claims against the Keeleys for breach of contract and for common law action on account (Dkt. #38 at p. 1). However, in its supplemental motion, Plaintiff withdrew its request for summary judgment as to claims for breach of contract and suit on account (Dkt. #51 at p. 2). Instead of addressing the merits of these claims, Plaintiff merely asks the Court to find that John Keeley and Dawn Keeley were both general partners at the time G&K Farms incurred the debt that is at issue, that Plaintiff obtained a default judgment against G&K Farms, and that, as such, the Keeleys are jointly and severally liable for the entire judgment as general partners of G&K Farms (Dkt. #51 at p. 3). Plaintiff argues that Texas law controls the enforcement of its remedy, but if the Court were to determine that North Dakota law applied because G&K Farms is a North Dakota partnership, North Dakota law provides for the same level of liability (Dkt. #51 at p. 6). Plaintiff notes that under Texas law, its claims against the Keeleys do not require relitigation of claims already adjudicated.

The Keeleys ask for summary judgment in their favor on Plaintiff's claims for sworn account, common law action on account, breach of contract, and quantum meruit, asserting that the claims are barred by the applicable statute of limitations (Dkt. #40 at p. 6).[1] Additionally, the Keeleys argue that Plaintiff's claims of breach of contract and quantum meruit are barred by the statute of frauds and that Plaintiff's claim for action on account cannot be established because no open account existed as a matter of law (Dkt. #40 at pp. 12, 17).

The Keeleys note, correctly, that the Court's ruling regarding the motion to vacate default judgment is determinative upon the Keeley's assertion that that claims on sworn account,

---

[1] The Keeleys note an exception to their argument, however, for claims related to the most recently invoice in the amount of $287.50 (Dkt. #40 at pp. 11-12).

common law action on account, breach of contract, and quantum meruit are time barred (Dkt. #40 at p. 12). The Court denied the motion to vacate default judgment, and the Court will not consider claims decided by the Court's default judgment. Accordingly, the Court denies awarding the Keeleys summary judgment on Plaintiff's claims on sworn account, common law action on account, breach of contract, and quantum meruit.

The Keeleys admit to being general partners of G&K Farms until September of 2009 (Dkt. #52 at p. 2). The Keeleys do not contest whether they were general partners at the time G&K Farms incurred the alleged debt, but rather they dispute the notion that G&K Farms incurred any debt at all, questioning the delivery of goods, invoices and bills of lading, and signatures therein (Dkt. #52 at p. 6). However, a default judgment against G&K Farms stands regarding debt incurred, according to Plaintiff's assertions and evidence, prior to the Keeleys' exit from G&K Farms in September (Dkts. #26, 30). Under the applicable general partnership law, "all partners are jointly and severally liable for all obligations of the partnership unless otherwise: (1) agreed by the claimant; or (2) provided by law," excepting liability to partners in a limited liability partnership and liability for persons admitted into an existing partnership for an obligation to the partnership that "(1) arises before the partner's admission to the partnership; (2) relates to an action taken or omission occurring before the partner's admission to the partnership; or (3) arises before or after the partner's admission to the partnership under a contract or commitment entered into before the partner's admission." Tex. Bus. Code §152.304.[2] Therefore, a general partner is jointly and severally liable for an existing judgment debt against the partnership if the general partner was in fact a general partner at the time of injury alleged. *See, American Star Energy and Minerals Corporation v. Stowers*, 457 S.W. 3d 427, 434 (Tex. 2015).

---

[2] Though the Court believes Texas law applies, the Court need not conduct a conflict-of-laws analysis because, though G&K Farms is a North Dakota partnership, North Dakota law also holds that general partners are jointly and severally liable for all obligations of the partnership. *See* N.D. Cent. Code § 45-15-06(1) (2013).

The Keeleys contend that Plaintiff fails to establish what substantive law applies in this case, which is necessary for summary judgment, and instead make reference to North Dakota law in regards to liability of a general partnership, Colorado law in regards to summary judgment on breach of contract (withdrawn by Plaintiff), and Texas law regarding summary judgment common law action on an account (withdrawn by Plaintiff) (Dkt. #52 at p. 14). In its supplemental motion and reply brief, Plaintiff clarifies its position, asserting that Texas law regarding partnership liability applies and references to other forum's laws merely demonstrate that the Court need not conduct a choice-of-law analysis because the outcome would not change under North Dakota law with regards to liability for general partners or Colorado law with regards to its claim on guaranty (Dkts. #51 at pp. 5-6; 61 at p. 5). The Keeleys, in fact, appear to agree that Texas law applies to the application remedy of collecting on a default judgment, citing *Hill v. Perel* for the proposition that "matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained" (Dkt. #40 at p. 8). 923 S.W. 2d 636, 639 (Tex. App.— Houston [1st Dist.] 1995, no writ).

The Court concludes that John Keeley and Dawn Keeley were both general partners at the time G&K Farms incurred the debt that is at issue, that Plaintiff obtained a default judgment against G&K Farms relating to that debt, and that, as such, the Keeleys are jointly and severally liable for the entire judgment as general partners of G&K Farms.

*Suit on Guarantee*

Plaintiff argues that it is entitled to summary judgment on its guaranty claim against John Keeley in accordance with the terms of the 2008 Agreement, and request a judgment against John Keeley for the full amount due and owing Plaintiff (Dkt. #43, Ex. 1 at p.7). The Keeleys argue that there is a genuine issue of material fact regarding the enforceability of the 2008

Agreement, and also, that they are entitled to summary judgment on the issue, asserting that a statute of limitations applies. Though the Court finds it likely that there is a genuine issue of material fact regarding the enforceability of the 2008 Agreement, John Keeley is jointly and severally liable for this same amount asserted by Plaintiff through the enforcement of the default judgment. Therefore the Court need not determine either request for summary judgment regarding the suit on guarantee at this time.[3]

*Attorneys' Fees and Costs*

Plaintiff argues that it is entitled to judgment regarding attorneys' fees and costs of court according to the 2008 Agreement which reads: "Applicant agrees to pay reasonable attorney fees and costs of collection" (Dkt. #38 at p. 10; Ex. A-1). In accordance with the Court's ruling that the Keeleys are jointly and severally liable for the default judgment against G&K Farms (which included attorneys' fees), it is unnecessary for the Court to address summary judgment on attorneys' fees relating to the debt against G&K Farms. However, Plaintiff specifically argues that John Keeley personally guaranteed all connection expenses and reasonable attorneys' fees in endeavoring to collect on John Keeley's obligations in the 2008 Agreement and generally requests attorneys' fees and expenses in the amount of $21,137.22, which, according to the Plaintiff, represents the amount increased since the entry of default judgment against G&K Farms, as to both John Keeley and Dawn Keeley (Dkts. #38 at p.10; 51 at p.7).

The Keeleys assert that there is a genuine issue of material fact as to whether John Keeley actually guarantied G&K Farms' debt, and any attorneys' fees and costs to collect, because he denies signing the 2008 Agreement, stating that he merely admits to printing "by John Keeley" and dating this statement in the area next to the signature block (Dkt. #52 at p. 9). Plaintiff

---

[3] In as far as Plaintiff's suit on guarantee relates to post-default judgment attorneys' fees and costs, the Court will address this issue separately in the following section.

claims that John Keeley's assertion and testimony that he did not sign the Agreement does not create a genuine issue of material fact, and argues that when John Keeley printed "by John Keeley," he did so knowing that he was agreeing to guaranty G&K Farms' debt (Dkt. #61 at p. 3).

The Keeleys also argue that the amount of fees is unreasonable under the circumstances, citing, in particular, fees related to Thomas Grabanski, a former defendant, and activities related to his bankruptcy case (Dkt. #52 at p. 12). Defendants further contest the reasonableness of attorneys' fees, referencing a specific example of the billing of 19.2 hours in connection with researching or analyzing the statute of limitations issue (Dkt. #52 at p. 13). The Keeleys argue that these issues are not exhaustive, but rather indicative of genuine issues of material fact that should preclude summary judgment on attorneys' fees (Dkt. #52 at p. 13). Plaintiff directly contradicts the Keeleys' arguments that it is seeking fees related to the bankruptcy proceeding, stating that the only fees and costs incurred after the default judgment on January 8, 2015.

The Court finds that summary judgment is not warranted on attorneys' fees and costs incurred after the default judgment. Initially, Plaintiff argued that it is entitled to recovery according to the language of the 2008 Agreement and according to John Keeley's personal guarantee, referencing the overall amount of attorneys' fees and costs incurred in prosecuting the entire litigation (Dkt. #38 at p. 6). While Plaintiff makes clear in its supplemental motion that it withdraws its request for summary judgment on claims for breach of contract and common law action on account, it does not as clearly explain its shift from requesting judgment on all attorneys' fees and costs to a new request. Rather, Plaintiff merely states in its supplemental motion that the Court consider "CPS's claim for attorney's fees accruing after the date of entry of the Default Judgment against G&K Farms" without new argument, offering only as an

9

"undisputed fact" that "[s]ince the entry of the Default Judgment, CPS has incurred additional attorney's fees in the amount of $20,752.50" and "additional costs in the amount of $384.72" (Dkt. #51 at p. 4). As support for these statements, Plaintiff cites to exhibits disclosing not merely attorneys' fees and costs following the entry of default judgment, but the range of attorneys' fees and costs extending back to May of 2013 (Dkt. #51 at p. 2).

It is only in Plaintiff's reply brief that it sufficiently delineates its request and cites to the limited range of exhibit pages relating to the time period following the entry of default judgment (Dkt. #61 at p. 3). It is therefore unsurprising that the Keeleys' response addresses the full range of asserted attorneys' fees rather than simply those related to the time following the default judgment in their response. Additionally, though Plaintiff argues that "Defendants did not submit any evidence to rebut the reasonableness and necessity of these attorney's fees," the Keeleys do in fact argue the unreasonableness of fees incurred after the default judgment, citing invoice entries on January 30, 2015, and February 11, 2015 (Dkts. #52 at p. 12; 61 at p. 3).

Considering the limited arguments and support presented by Plaintiff in this matter, the Court finds that summary judgment on attorneys' fees and costs of court for the time period following the default judgment is not appropriate at this time. Further, though the Court denies summary judgment for attorneys' fees and costs on an independent basis, the Court notes the likelihood of a genuine issue of material fact regarding the validity and enforceability of the guarantee in the 2008 Agreement.

*Fraud Claims*

In its Second Amended Complaint, Plaintiff asserts claims of fraud, fraudulent inducement, and fraudulent concealment against John Keeley relating to material misrepresentations made in the 2009 Application (Dkt. 43, Ex. 1 at p. 9). The Keeleys argue that

Plaintiff cannot establish these claims and requests summary judgment. They argue that Plaintiff cannot demonstrate that it relied on the 2009 Application in extending credit to G&K Farms (Dkt. #40 at p. 13). The Keeleys note that, in general, a party must show reliance on the accused party's false representation of a material fact to its detriment in order to establish a fraud claim (Dkt. #40 at p. 13). The Keeleys suggest that any credit extended to G&K Farms was done on reliance on the 2008 Agreement only, pointing out that, in the Bankruptcy proceeding, Vance Stroebel, regional credit manager for Plaintiff, submitted a report that cites only the 2008 Agreement in support of Plaintiff's claim that it is owed a principal balance (Dkt. #40 at p. 15). In addition, the Keeleys note that Stroebel has testified in his individual capacity that he did not know of any material misrepresentations by John Keeley that induced Plaintiff to extend credit to G&K Farms in 2009 (Dkt. #40 at p. 16).

Plaintiff argues that, but for John Keeley's false representations in the 2009 Application, Plaintiff would not have continued to be extended to G&K Farms (Dkt. #56 at p. 5). For support, Plaintiff also points to Vance Stroebel, in particular citing a declaration in which Stroebel states that "[i]f I would have known that the financial representations made in the 2009 Credit Application were false, I would not have allowed G&K Farms to continue to purchase crop inputs from CPS beginning February 23, 2015." (Dkt. #56, Ex. 13 at p. 2). Further, Plaintiff concedes that the main purpose of the 2009 Application was to obtain third-party financing, but holding that the other purpose was to enable Plaintiff to determine whether it would keep doing business with G&K Farms (Dkt. #56 at p. 12). In Stroebel's deposition he stated, in reference to the extension of credit after February 2009, that the "[2009 Application] was a part of it. All information was brought forward . . . 'Cause we've had these customers, so it's accumulative information gathering." (Dkt. #56, Ex. 10 at App. 081-082 (28:17-29:2)).

The Court finds that there is a genuine issue of material fact regarding whether Plaintiff relied upon the 2009 Application in extending credit to G&K Farms, and denies summary judgment regarding claims of fraud, fraudulent inducement, and fraudulent concealment against John Keeley.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt. #38) is hereby **GRANTED IN PART** and **DENIED IN PART** and Defendants John Keeley and Dawn Keeley's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure (Dkt. #40) is hereby **DENIED**.

The Court finds that John Keeley and Dawn Keeley are jointly and severally liable for the entire default judgment against G&K Farms.

The Court denies summary judgment to Plaintiff on Plaintiff's suit on guaranty and on attorneys' fees and costs accruing after the date of entry of the default judgment against G&K Farms.

The only issues remaining before the Court are attorneys' fees and costs accruing after the date of entry of the default judgment against G&K Farms and Plaintiff's suit on guarantee and claims of fraud, fraudulent inducement, and fraudulent concealment.

**IT IS SO ORDERED.**
**SIGNED this 14th day of August, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE