# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| CROP PRODUCTION SERVICES, INC. | § | |
| | § | |
| v. | § | CASE NO. 4:14-CV-559 |
| | § | Judge Mazzant |
| JOHN KEELEY, individually | § | |
| JOHN AND DAWN KEELEY, | § | |
| individually, G&K FARMS, a general | § | |
| partnership | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants John Keeley and Dawn Keeley's Renewed Motion to Vacate Default Judgment Against G&K Farms Under Federal Rules of Civil Procedure 55 and 60 And/Or to Amend or Alter the Judgment Against John Keeley and Dawn Keeley Under Federal Rule of Civil Procedure 59 (Dkt. #102). After reviewing the relevant pleadings, the Court finds the Keeleys' motion is denied.

### BACKGROUND

From January 1, 2008, until September of 2009, Defendants Thomas Grabanski, John Keeley, and Dawn Keeley (the "Keeleys") were general partners of G&K Farms, a North Dakota General Partnership (Dkt. #43, Ex. 3). Plaintiff Crop Production Services, Inc. ("CPS") alleges that during 2009 it delivered several shipments of product to G&K Farms and was not paid for the goods (Dkt. #43, Ex. 1 at pp. 3-4). CPS argues that G&K Farms' debt for goods received in 2009 amounts to $642,669.55 (Dkt. #43, Ex. 1 at p. 4).

On September 15 and 16 of 2009, the Keeleys assigned their interests in G&K Farms to Thomas Grabanski (Dkt. #43, Ex. 3 at p. 2). On July 29, 2013, Thomas Grabanski filed for bankruptcy (the "Bankruptcy Case") in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court") (Dkt. #43, Ex. 5 at p.2). On July 31, 2013, CPS

1

initiated an action against Thomas Grabanski and John Keeley for claims arising from the alleged debt as a state court action, captioned *Crop Production Services, Inc. v. Thomas Grabanski and John Keeley*, in the 76th/276th Judicial District Court of Camp County, Texas (the "Debt Case"). On September 10, 2013, John Keeley filed a Notice of Removal with the Bankruptcy Court. The case was automatically referred to the Court, and the Court referred the Debt Case to the Bankruptcy Court based on its relation to the Bankruptcy Case pursuant to 28 U.S.C. §§ 1334 and 1452(a). John Keeley filed a cross-claim against Tom Grabanski in the Debt Case. On Thomas Grabanski's motion, the Bankruptcy Court dismissed the claims and cross-claims asserted against him. On August 13, 2014, following a motion from the Keeleys, the Court withdrew the reference of the Debt Case from the Bankruptcy Court so that the Debt Case might proceed before the Court (Dkts. #2, 7).

While the Debt Case was pending as an adversary proceeding in the Bankruptcy Court, CPS filed a Second Amended Complaint on April 22, 2014, adding G&K Farms and Dawn Keeley as parties and making claims under six causes of action: (1) sworn account; (2) common law action on account; (3) breach of contract; (4) quantum meruit; (5) suit on guaranty; and (6) fraud, fraudulent inducement, and fraudulent concealment (Dkt. #43, Ex. 1).

On November 6, 2014, CPS moved for default judgment against G&K Farms (Dkt. #26). No party objected, and the clerk entered default of G&K Farms on October 27, 2014 (Dkt. #25). The Court granted default judgment to CPS against G&K Farms on January 8, 2015 (Dkt. #30).

On February 27, 2015, the Supreme Court of Texas issued its ruling in *American Star Energy and Minerals Corporation v. Stowers*, holding that: "[T]he limitations period against a partner generally does not commence until after final judgment against the partnership is entered." 457 S.W. 3d 427, 428 (Tex. 2015).

On April 30, 2015, CPS brought a motion for partial summary judgment based in part on the default judgment (Dkt. #38). On May 1, 2015, John and Dawn Kelley (the "Keeleys") brought a motion to vacate the default judgment against G&K Farms (the "First Motion") (Dkt. #41). On May 22, 2015, CPS filed its response to the First Motion (Dkt. #55), and on June 1, 2015, the Keeleys filed their reply in support of the First Motion (Dkt. #60). On July 24, 2015, the Court entered an order denying the First Motion (Dkt. #78).

On August 14, 2015, the Court granted, in part, CPS's Motion for Partial Summary Judgment and found that the Keeleys were jointly and severally liable for the entire Default Judgment against G&K Farms under general partnership law (Dkt. #86). On September 22, 2015, the Court held a bench trial on CPS's remaining claims against Defendant John Keeley for suit on a guaranty, fraud, fraudulent inducement and fraudulent concealment. On October 14, 2015, the Court entered written findings of fact and conclusions of law and found that CPS was not entitled to relief under its claims for suit on guaranty, fraud, fraudulent inducement, and fraudulent concealment against Defendant John Keeley (Dkt. #98). On October 27, 2015, the Court entered Final Judgment in favor of CPS against the Keeleys.

On November 3, 2015, the Keeleys filed their Renewed Motion to Vacate Default Judgment Against G&K Farms Under Federal Rules of Civil Procedure 55 and 60 And/Or to Amend or Alter the Judgment Against John Keeley and Dawn Keeley Under Federal Rule of Civil Procedure 59 (the "Renewed Motion") (Dkt. #102). On November 23, 2015 CPS filed its response to the Renewed Motion. On November 30, 2015 the Keeleys filed their reply in support of the Renewed Motion (Dkt. #111). On December 7, 2015, CPS filed a sur-reply (Dkt. #114).

# RULE 59 ANALYSIS

Although Federal Rule of Civil Procedure 54(b) applies to motions for reconsideration of an interlocutory order, courts have utilized the standards of Rule 59 when analyzing such motions. *Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F. Supp. 2d 550, 553 (N.D. Tex. 2009) ("considerations similar to those under Rules 59 and 60 inform the Court's analysis"); *T-M Vacuum Prod., Inc. v. TAISC, Inc.*, No. H-07-4108, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008), *aff'd sub nom. T-M Vacuum Prod. v. Taisc, Inc.*, 336 Fed. Appx. 441 (5th Cir. 2009) ("Rule 59(e)'s legal standards are applied to motions for reconsideration of interlocutory orders."). "Although the general rule is that motions for reconsideration will not be considered when filed more than [twenty-eight] days after the judgment at issue is entered, this deadline does not apply to the reconsideration of interlocutory orders." *T-M Vacuum Prod., Inc.*, 2008 WL 2785636, at *2 (citing *Standard Quimica De Venez. v. Cent. Hispano Int'l, Inc.*, 189 F.R.D. 202, 204 (D.P.R. 1999)).[1] Therefore, "[a] court may consider a motion to reconsider an interlocutory order so long as the motion is not filed unreasonably late." *Id.* (citing *Standard Quimica De Venez.*, 189 F.R.D. at 205; *Martinez v. Bohls Equip. Co.*, No. SA-04-CA-0120-XR, 2005 WL 1712214, at *1 (W.D. Tex. July 18, 2005)).[2]

A motion seeking reconsideration, "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion is "not the proper vehicle for

---

[1] Federal Rule of Civil Procedure 59(e) was amended in 2009, in which it provided for the twenty-eight day limitation. The case referenced by the Court, uses the original ten day limit, as it was decided before the amendment took effect.

[2] CPS argues that the Keeley's motion is untimely because it was made more than 28 days after the Court's publication of the Default Judgment and Memorandum Opinion and Order which granted summary judgment on the claims at issue in the Keeley's Renewed Motion (Dkt. #107 at p. 24). However, this was an interlocutory order, and the Renewed Motion was made within 28 days of the Final Judgment. *See* Dkt. #111 at p. 13; *see also Calpetco 1981 v. Marshall Expl., Inc.*, 989 F.2d 1408, 1414 (5th Cir. 1993) (finding that "[b]ecause a partial summary judgment is interlocutory in nature, the district court retains the discretion to revise it"). Therefore, the Court finds that the Keeley's Renewed Motion is timely.

rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet*, 367 F.3d at 479 (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *Id.* (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)). "Relief under 59(e) is also appropriate when there has been an intervening change in the controlling law." *Milazzo v. Young*, No. 6:11-CV-350, 2012 WL 1867099, at *1 (E.D. Tex. May 21, 2012) (citing *Schiller v. Physicians Res. Grp.*, 342 F.3d 563, 567 (5th Cir. 2003)). "Altering, amending, or reconsidering a judgment is an extraordinary remedy that courts should use sparingly." *Id.* (citing *Templet*, 367 F.3d at 479).

The Keeleys argue that default judgment should not have been entered against G&K Farms under the *Frow* doctrine (Dkt. #102 at p. 8). *See Frow v. De La Vega*, 82 U.S. 552 (1872). The Keeleys maintain that because they were "actively defending the claims involving joint and several liability" the default judgment should not have been entered against G&K Farms (Dkt. #102 at p. 8). The Keeleys argue that the Court should amend or alter the judgment against the Keeleys by eliminating any amounts for the invoices outside of the statute of limitations period (Dkt. #102 at p. 26).[3]

In *Frow*, the plaintiff filed a claim against several defendants alleging that they acted in a joint civil conspiracy to commit fraud. *Frow*, 82 U.S. at 553. Frow was the only defendant who did not submit a timely answer, and the court entered the equivalent of an order for default judgment. *Id.* Frow sought to vacate the order but the court entered a "final decree" against

---

[3] CPS argues that since the Keeleys did not mention *Frow* in their first motion to vacate, the Court should refuse to consider arguments and evidence relating to *Frow* (Dkt. #107 at p. 9). However, the Court finds that while the parties argue *Frow*'s relevance under both their Rule 59 analysis as well as their Rule 55 and 60 analysis, it is appropriate for the Court to consider its applicability to discern if there has been an error of law.

Frow. *Id.* After a trial that was resolved in the other defendants' favor, the Supreme Court overturned the default judgment against Frow. *Id.* at 553-555.

The Keeleys assert that "the 'incongruous' result that *Frow* seeks to avoid is exactly what occurred in this case." (Dkt. #102 at p. 12). The Keeleys argue that "[t]he same four-year statute of limitations that applied to CPS's suit on guaranty against John Keeley applied to the contract claims against G&K Farms." (Dkt. #102 at p. 17). However, the Keeleys also concede that although "CPS was seeking the exact same damages from the three defendants" it was doing so on different legal theories (Dkt. #102 at p. 12). The Keeleys also admit that "CPS claimed G&K Farms, and the Keeleys were jointly and severally liable for partnership debts, while it was seeking to hold John Keeley personally liable under a personal guaranty for the same debt" (Dkt. #102 at p. 12).

CPS explains that *Frow* does not apply to this case because when the Court "entered Default Judgment, it was doing so as it pertained to the discrete claims CPS alleged against G&K Farms (breach of contract, suit on open account, sworn account, quantum meruit) for whose liability Defendants are *derivatively* liable as admitted general partners" (Dkt. #107 at p. 3). In contrast, "Defendant John Keeley's direct and *individual* liability under CPS's suit on a guaranty (a specific claim CPS did not make against G&K Farms) did not depend on G&K Farms' liability for the separate claims CPS asserted against it." (Dkt. #102 at p. 3). Therefore, "[w]hen the Court entered its Default Judgment, the potential of inconsistent judgments as to different parties was not present . . . because that Judgment addressed CPS's specific claims against G&K Farms, and not as to John Keely individually, which were left for trial." (Dkt. #107 at p. 15).

There are two schools of thought regarding the interpretation of *Frow*. The school of thought that supports a broad reading of *Frow* establishes a general rule that "when one of

several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A CHARLES A. WRIGHT, ARTHUR R. MILLER AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2690 at 73 (3d ed. 1998). Wright, Miller and Kane further state that the *Frow* doctrine applies where liability is joint and several and speculates that it can be extended to situations in which several defendants have closely related defenses. *Id. See U.S. ex rel Costner*, 56 F. App'x. at 288 (finding that *Frow* applies where liability was joint and several, as opposed to merely joint as in *Frow*, because "[t]he principle on which *Frow* relies is that logically inconsistent verdicts should be avoided. Although joint liability is one circumstance in which such inconsistency may arise, it is not the only one.").

The more narrow school of thought states that *Frow* stands for the rule that default judgment cannot be entered against one of several defendants when the theory of recovery is one of joint liability, where, as a matter of law, no one defendant may be liable unless all defendants are liable. Under this approach, "*Frow* . . . does not apply to cases involving the joint and several liability of multiple defendants for damages because in such a case the liability of each defendant is not necessarily dependent upon the liability of any other defendant, and plaintiff may be made whole by a full recovery from any defendant." *Id. See In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1258 (7th Cir. 1980) (explaining that "when different results as to different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking" and that "to apply *Frow* to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended"); *Mori Seiki USA, Inc. v. McIntyre*, No. CIV A 306-CV-2344-B, 2008 WL 577274, at *2 (N.D. Tex. Mar. 4, 2008) (agreeing with the findings in *Uranium* that "entry of default judgment as to liability is appropriate where liability is joint and

7

several."); *Friedman v. Lawrence,* 1991 WL 206308, at *3 (S.D.N.Y. 1991) (holding that "if the liability sought to be imposed is joint and several rather than joint, most courts have held that the rationale of *Frow* does not directly apply, since it would not be inconsistent to hold some but not all defendants liable.").

The Fifth Circuit has yet to decide which interpretation of Frow it agrees with.[4] While other circuit courts have addressed *Frow*, many have done so without specifically asserting that they follow the broad or the narrow interpretation of the case's applicability. *See U.S. ex rel. Costner v. United States*, 56 F. App'x at 288 (finding specifically that *Frow* applies in cases in which there is joint and several liability and that it could probably extend to situations in which "several defendants have closely related defenses") (citation omitted); *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 (3d Cir. 1986) (holding that "*Frow* stands for the proposition that if at trial facts are proved that exonerate certain defendants and that as a matter of logic preclude the liability of another defendant, the plaintiff should be collaterally estopped from obtaining a judgment against the latter defendant" and then analyzing "whether there were proved at trial facts that as a matter of logic preclude the liability of [the non-participating defendants]."); *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1511–12 (11th Cir. 1984) (stating that under *Frow*, a plaintiff who failed to recover from one defendant on a breach of contract claim could not recover from a second defendant who had not defended the suit); *In re Uranium Antitrust Litig.*, 617 F.2d at 1256-58 (stating specifically that "to apply *Frow* to a claim of joint and several liability is to apply that venerable case to a context

---

[4] The Keeleys assert that "while the Fifth Circuit has not directly addressed the *Frow* doctrine, it has adopted its essential holding. (Dkt. #102 at p. 10) In *Lewis v. Lynn*, the court stated that "several courts have held that where 'a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant." 236 F.3d 766, 768 (5th Cir. 2001). The court stated that "[t]he policy rationale behind this rule is that it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Id.* The Court agrees that while the Fifth Circuit has not specifically stated which interpretation of *Frow* it agrees with, it finds the underlying rationale behind the doctrine persuasive.

8

for which it was never intended, and ignores the several or independent aspects of the claim set forth in this complaint."); *Int'l Controls Corp. v. Vesco*, 535 F.2d 742, 746 (2d Cir. 1976) (holding that default judgment was proper in Securities Exchange Act case and distinguishing *Frow* on grounds that it only controls "in situations where the liability of one defendant necessarily depends upon the liability of the other"), *cert. denied*, 434 U.S. 1014 (1977).

However, relevant case law supports the conclusion that the case at hand does not implicate the concerns underlying *Frow*. In many of the cases that discuss *Frow*, the issue is whether it is incongruous to find one or more defendants liable under a theory of default while other defendants who did not default *on the same claim* are found not to be liable. *See Lewis*, 236 F.3d at 768 (after the court granted the non-defaulting defendant's summary judgment the plaintiff moved for a default judgment *on the same claims*, which the court refused to grant because plaintiff's factual allegations were insufficient to establish liability) (emphasis added); *Shaunfield v. Paramount Recovery Sys.*, No. 3:12-CV-4686-M BH, 2014 WL 4814827, at *4 (N.D. Tex. Sept. 29, 2014) (finding that "[d]espite default, it would be 'incongruous and unfair' to allow the other defendants to prevail against Plaintiff while entering judgment in his favor against Paramount *on the same issues under the same allegations*") (emphasis added). These cases hold that it would be incongruent to allow a default judgment to be entered against a defendant who is similarly situated to a defendant who is found not to be liable for the same claim.

The situation at hand is different because the entry of a default judgment against G&K Farms does not logically conflict with a finding that John Keeley could avoid liability through a statute of limitations defense regarding the suit on guaranty against him individually. *See Farzetta*, 797 F.2d at 154 (upholding the district court's entry of default judgment because the

9

jury's finding that the plaintiff assumed the risk of exposure to one defendant's asbestos does not compel, as a matter of logic, the conclusion that the plaintiff had also assumed the risk of exposure to the other defendants' asbestos); *Gulf Coast Fans, Inc.*, 740 F.2d at 1511–12 (finding that the plaintiff who failed to recover from one defendant because the plaintiff had breached the contract could not recover from a second defendant who had failed to defend the suit on the same breach of contract claim).

The Keeleys argue at length that the same statute of limitations that applied to the suit on guarantee against John Keeley also applies to the contract claims against G&K Farms (Dkt. #102 at pp. 16-18; Dkt. #111 at pp. 3-4). Therefore, the Keeleys contend that a finding that the statute of limitations barred recovery on the suit on guaranty logically precludes liability on the contract claims against G&K Farms. This is simply not the case. CPS argues that it could have introduced evidence and made legal arguments that would have shown that the statute of limitations defense would not have applied to the contract claims against G&K Farms (Dkt. #107 at pp. 16-19). The Court finds that the parties' hypothetical arguments about what could have been proved at trial demonstrates exactly why *Frow* does not apply in the current case.[5] The finding of a valid defense on the suit on guaranty simply does not logically preclude liability on the claims on which the Court entered default judgment.

---

[5] CPS points out that it was "not required to introduce evidence supporting its counter-arguments as to why the statute of limitations had not run on its claims against G&K Farms." (Dkt. #107 at p. 18). CPS successfully argues that there are several possible reasons (not applicable to the individual claim against Defendant John Keeley) why the statute of limitations might not apply to the contract claims against G&K Farms. See Dkt. #107 at p. 17 (arguing that an opening accounting existed and "the accrual date for suit on guaranty is different than the accrual date for CPS's claim on an open account"); Dkt. #114 at p. 8 (asserting that evidence would have supported that claims against G&K Farms were not barred by that statute of limitations because G&K Farms "acknowledged that it owed CPS and intended to pay and never repudiated it). Without reaching the merits of these arguments, the Court find that CPS has demonstrated that different factual and legal scenarios could exist which would establish that a finding that the statute of limitations applied to one claim in this case does not logically necessitate a finding that the statute of limitations would have applied to the claims on which the Court found default.

**RENEWED MOTION TO VACATE ANALYSIS**

The Keeleys argue that "[e]ven if this Court concludes the *Frow* doctrine does not apply, it should nevertheless find the Keeleys have established good cause to vacate the default judgment" (Dkt. #102 at p. 8). The Keeleys argue that good cause exists because they "have established a meritorious defense to effectively all of Plaintiff's partnership-related claims, and the unique circumstances of this case justify the Keeleys' initial failure to object to the entry of default judgment against G&K Farms." (Dkt. #102 at p. 8).

A court may set aside an entry of default "for good cause shown." FED. R. CIV. P. 55(c). "[T]he requirement of 'good cause' . . . ha[s] generally been interpreted liberally." *Amberg v. Federal Deposit Ins. Corp.*, 934 F.2d 681, 685 (5th Cir. 1991). Courts will look at the following factors to determine whether there is good cause to set aside a default: (1) whether the failure to act was willful; (2) whether setting the default aside would prejudice the adversary; and (3) whether a meritorious claim has been presented. *Lacy v. Sitel Corp.*, 227 F.3d 290, 292 (5th Cir. 2000). These factors are not exclusive, but are to be regarded simply as a means to identify good cause. *Effjohn Intern. Cruise Holdings, Inc. v. A&L Sales*, 346 F.3d 552, 563 (5th Cir. 2003) (citing *Dierschke v. O'Cheskey*, 975 F.2d 181, 184 (5th Cir. 1992)). Other factors, such as whether the party acted expeditiously to correct the default, may also be considered. *Id.*

The Keeleys argue the Court should find that the default judgment should be vacated for good cause because "G&K Farms undisputedly has a meritorious defense to CPS's claim, as the statute of limitations precludes CPS from recovering for all but one invoice." (Dkt. #102 at p. 13). As previously stated, the Keeleys assert that, "[t]he same four-year statute of limitations that applied to CPS's suit on guaranty against John Keeley applied to the contract claims against G&K Farms." (Dkt. #102 at p. 17). As the Court has already stated,

the Court finds that whatever defenses the Keeleys might have been capable of raising are now waived as they were aware of the default proceedings and affirmatively chose not to challenge the default in favor of waiting to assert a personal statute of limitations defense. The Court will not award the Keeleys a second chance to challenge the default simply because they relied wholly on an unmeritorious legal defense.

(Dkt. #78 at p. 6).[6] Therefore, the Court will certainly not award the Keeleys a third chance to challenge the default simply because they relied wholly on an unmeritorious legal defense.

The Keeleys rehash and expand upon several other arguments that they previously presented in support of their initial motion to vacate. The Keeleys again argue that they had good reason not to object to the entry of default judgment against G&K Farms because they faced legitimate questions about their standing to raise the statute of limitations defense on behalf of G&K Farms (Dkt. #102 at pp. 113, 118). The Keeleys maintain that good cause existed "[i]n light of the bankruptcy trustee being the sole person with authority to act on behalf of G&K Farms in this case, and questions regarding a violation of the automatic stay." (Dkt. #102 at p. 20).[7] However, the Court has already stated that the Keeleys had standing, and the Keeleys appear to concede that they had standing despite the trustee.[8] Therefore, the Court's

---

[6] The Keeleys assert that "the Court reserved any ruling on the statute of limitations for trial" in its previous order (Dkt. #102 at p. 17). The Keeleys point to the Court's statement that "[t]he Court does not now determine the merit of the Keeley's proposed statute of limitations defense as it relates to G&K Farms." (Dkt. #78 at p. 6). The Keeleys mistakenly state that because the Court concluded the statute of limitations precludes recovery for nearly all of its claims at trial, "this Court must recognize that had this Court [not] granted the motion to vacate, CPS's best case scenario would be a judgment in the thousands, not millions, of dollars." The Keeleys misinterpreted the Court's previous order and the effect of the Court's findings. The Court did not reserve the issue of application of the statute of limitations to the Keeley's liability as partners for trial. This was not an issue that proceeded to trial (Dkt. #86). Furthermore, as previously discussed at length, the Court's finding that the statute of limitations applied to CPS's suit against John Keeley individually on personal guarantee does not dictate that the Court would have found that the same statute of limitations defense would apply to the separate claims brought against the Keeleys derivatively.

[7] CPS states that the Keeleys are now submitting "additional evidence and arguments relating to . . . their perceived belief that they did not have standing" (Dkt. #107 at p. 9). CPS argues that the Keeleys were required to raise any and all defenses and fully apprise CPS and the Court of all the reasons and argument to support setting aside the Default Judgment." (Dkt. #107 at p. 8) (citing *E360 Insight v. Spamhaus Project*, 500 F.3d 594, 601 (7th Cir. 2007). However, the Court agrees with the Keeleys that "[n]either the *E360 Insight* decision nor any other precedential or persuasive authority provides the Keeleys waived the issue by failing to raise it as part of their initial motion to vacate the default judgment against G&K Farms." (Dkt. #111 at p. 3).

[8] The Keeleys state that "because [they] can be held liable as former general partners . . . [they] do not assert they do not have the standing or authority to raise any legal defenses applicable to G&K Farms." (Dkt. #102 at p. 20).

analysis regarding whether or not there was good cause due to the Keeley's concerns about standing remains the same as in its previous order.  *See* Dkt. #78 at pp. 3-5.

The Keeleys also re-assert their argument that they were justified in not objecting to the default because they believed that they had a valid defense.  The Keeley's again argue that "between the time of the Court of Appeals' decision in *American Star* on May 14, 2013 and the Texas Supreme Court's decision on February 27, 2015, the Court of Appeals' decision was the controlling authority regarding the statute of limitations against partners and partnerships under the Texas Revised Partnership Act." (Dkt. #102 at p. 22).  Therefore, the Keeleys assert that during this window, it was proper for them to believe that they would have been able to assert this defense as to their individual liability.  However, the Court has already found that "the Keeleys should have been aware that their assumed defense was at issue before the Supreme Court of Texas and that relevant court decisions suggested that their defense was far from certain to hold up under the application of the TRPA." (Dkt. #78 at p. 7).  The Keeley's expanded argument concerning their reliance on *American Star* was unpersuasive and the Court one again finds that "examining the culpability of the Keeleys' conduct . . . their failure to act was not justified." (Dkt. #78 at p. 5).  The Keeleys' Renewed Motion does not alter the Court's analysis of the Keeleys' culpability or the status of the law at the time that the Motion for Default Judgment was filed.  *See* Dkt. #78 at pp. 5-7.

The Keeleys also again assert that CPS would not suffer any prejudice if the judgment was vacated (Dkt. #23). In the Court's order regarding the Keeley's First Motion, the Court found that "Plaintiff would suffer some limited prejudice if the default judgment were vacated by being required to further litigate claims against G&K farms" (Dkt. #78 at p. 6-7).  The Court's analysis remains the same.  *See* Dkt. #78 at pp. 6-7.

The Keeleys further argue that "the size of the default judgment in favor of Plaintiff weighs heavily in favor of vacating the default judgment" (Dkt. #102 at p. 25). However, the Court previously considered this factor and found that the large amount of money at stake was not a sufficiently persuasive "additional factor" in support of the Keeley's attempt to show "good cause" to set aside the default judgment (Dkt. #78 at p. 7). The Court's analysis remains the same. *See* Dkt. #78. Therefore, the Court still does not find that the Keeleys have shown good cause when it considers the prejudice to CPS, and the waiver of a theoretically meritorious defense, and the willfulness of the default.

## CONCLUSION

It is therefore **ORDERED** that Defendants John Keeley and Dawn Keeley's Renewed Motion to Vacate Default Judgment Against G&K Farms Under Federal Rules of Civil Procedure 55 and 60 And/Or to Amend or Alter the Judgment Against John Keeley and Dawn Keeley Under Federal Rule of Civil Procedure 59 (Dkt. #102) is hereby **DENIED**.

**IT IS SO ORDERED.**
**SIGNED this 12th day of May, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

14